

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 2-08-111-CR

ELIUD SALAZAR                                                    APPELLANT

V.

THE STATE OF TEXAS                                                    STATE

------------

### FROM THE 158TH DISTRICT COURT OF DENTON COUNTY

------------

## OPINION

------------

### I. INTRODUCTION

Appellant Eliud Salazar appeals his conviction for driving while intoxicated. In three points, Salazar argues that the trial court erred by allowing testimony regarding evidence he claims was destroyed by the police; that the trial court erred by allowing the arresting officer to testify to Salazar's performance on the horizontal gaze nystagmus (HGN) test; and that the trial court erred by admonishing defense counsel. We will affirm.

## II. BACKGROUND

At approximately 7:00 p.m., January 6, 2007, Charlotte Bradford—accompanied by her daughter—was driving along F.M. 407 in Denton County, Texas. Bradford said that she witnessed Salazar driving toward her "at a terrib[ly] high rate of speed." Bradford testified that Salazar drove his vehicle out of his lane and fully into her lane to an extent that "[he] was directly in front of me." Bradford stated that this happened at a time when there were roughly only two car lengths between herself and Salazar. Bradford said that she thought, "my daughter and I [were] going to die." Bradford said she then pulled over to the right as far as she could and that Salazar also quickly turned to his right "[i]nches before having a head-on [collision.]" Bradford said that she "had [come] to a stop" and that she "sat there [momentarily] to try to get my bearings together."

As she sat, Bradford said she observed Salazar "going all over the road" before he left the road, crashed through a fence, and drove erratically through a pasture. Bradford's daughter said she witnessed Salazar travel "off the road to the right side . . . and then all of a sudden I could see headlights, and they were just bouncing all over the grass into that field, and then all of a sudden it stopped." Bradford immediately drove to a nearby police station where she and

her daughter waived down a police officer and explained what had just occurred.

Rebecca Nickelson said that she first noticed Salazar driving erratically and at high speed when he pulled out in front of her as she exited Interstate 35 onto F.M. 407. She said Salazar was traveling very fast and his tires were "squealing" as he pulled away from the parking lot shared by a gas station and a liquor store. Nickelson recalled that Salazar's vehicle continued to separate from hers, so much so that she almost lost sight of him. By Nickelson's account,

> As I topped the hill, I realized I saw the same taillights at the bottom of the hill which starts an S curve, and it is 35 miles an hour around that curve. And I continued just going down, and as I hit the S curve, there was billowing like rolls of dirt and pebbles just flying.

As Nickelson approached, she found Salazar's vehicle upside down. Nickelson positioned her car so that its headlights would illuminate Salazar's vehicle. She saw Salazar crawl from the driver's seat, out the back window, and lean against his vehicle. Nickelson got out of her car and yelled, "are you okay, are you okay, can you hear me, are you okay[?]" Nickelson said that Salazar did not respond. At this time multiple vehicles arrived, including the police.

Police officer Sean Foley said that when he arrived Salazar had a very disheveled appearance, his eyes were bloodshot, he smelled of urine and had

3

a urine stain on the front of his jeans, his speech was "real thick tongued", and he had a strong smell of alcohol on his breath and "generally from his person." Foley testified that he conducted standardized field sobriety tests, including the HGN, the walk-and-turn, and the one-legged stand. Defense counsel objected to the testimony regarding the HGN test, arguing that the State had not properly established that Foley was qualified to perform it. The trial court overruled the objection.

Foley said that Salazar admitted that he was familiar with the field sobriety tests because of prior DWI convictions. Foley testified that Salazar failed all three tests. Foley said that Salazar was "definitely in the category of the more intoxicated people I have had to deal with in my career, substantially impaired." A videotape from Foley's patrol car camera of Foley's encounter with Salazar was played for the jury at trial.

Foley arrested Salazar. After his arrest, Salazar provided a breath specimen at 8:48 p.m. The breath specimen showed 0.152 grams of alcohol per 210 liters of breath and 0.145 grams of alcohol per 210 liters of breath.

During the trial, the state elicited testimony regarding a beer bottle which was allegedly found on the side of the road roughly 200 feet from where Salazar's vehicle came to rest in the pasture. Foley described the bottle as cold and partially wrapped in a bag, with some condensation on the outside and a

4

small amount of liquid inside. Foley said that he took a picture of the bottle and, although he did not know what he ultimately did with the bottle, it was his department's policy to "not seize alcoholic beverage containers as a standard practice." Defense counsel objected to this testimony and to the admission of the photograph, claiming that the bottle was not near Salazar's vehicle. Both orally and by written motion, defense counsel also argued that because the State had left the bottle on the side of the road, they had effectively destroyed the bottle without first allowing Salazar to independently test it. Specifically, defense counsel argued:

> I think that the state by attempting to link this bottle and attempting to testify that it was of condensation and cold is attempting to imply to the jury that this is somehow connected with [] Salazar's behavior.
>
> If that had been done and that evidence had been preserved, obviously, it could have been fingerprinted, could have been examined further but was destroyed that night, or certainly left out there at the scene, which is effectively under Pena an obstruction of potentially useful evidence and certainly evidence that would be exculpatory at this point now that the state has chosen to bring this matter up.
>
> So I would request the court make the findings with regard to the three-step analysis, such as required under Pena, and then make those findings as is required by both Pena 2 and Pena 3. And I believe it warrants -- and also subsequently move for a dismissal of the case based upon the loss or destruction of this evidence.

5

The trial court overruled defense counsel's objection and denied his motion for dismissal.

The State also elicited testimony from Lori Fuller, a technical supervisor for the Southwestern Institute of Forensic Sciences. The State questioned Fuller regarding the equipment used to take Salazar's breath samples. Defense counsel objected multiple times during her testimony. In almost every instance, the trial court overruled the objection. After the trial court overruled one of these objections, defense counsel moved for a mistrial. The trial court ordered the bailiff to escort the jury from the courtroom and addressed defense counsel with the following admonishment:

> [T]hat is the fourth time that you have just suddenly 'I move for a mistrial.' It hasn't been preceded by a ruling which was in your favor. It hasn't been preceded by any sort of a precedent that would give you the right -- or me the right to grant a mistrial, that I'm aware of. I believe that you're simply doing it, one, to aggravate me and you have succeeded. Secondly, I think you're doing it to somehow influence the jury or make them believe that something terrible has gone wrong when, in fact, it has not.
>
> The next time you make a motion for a mistrial, I'm going to have the jury sent out, I'm going to ask you to very concisely explain the legal basis for your motion for a mistrial, and it better not be because, Judge, you're just stupidly wrong or something to that effect.

After further discussion regarding counsel's objection and trial exhibits, the jury was then brought back and the trial proceeded. The jury ultimately

6

found Salazar guilty of third-degree felony DWI and assessed punishment at seven years' incarceration. The trial court sentenced Salazar accordingly. This appeal followed.

## III. DISCUSSION

### A. Preservation of Evidence

In his first point, Salazar argues that the trial court erred by overruling his objection to testimony regarding, and the admission of, a photograph depicting a beer bottle on the side of the road near where Salazar's vehicle rolled over. Salazar's argument is built on the premise that the officers in this case having left the beer bottle by the side of the road was tantamount to the destruction of potentially exculpating evidence. Specifically, Salazar argues that in accordance with the Waco Court of Appeals' decision in *Pena v. State*, this court should first hold that the Texas Due Course of Law provision provides a greater level of protection than the federal Due Process Clause. 226 S.W.3d 634, 637–53 (Tex. App.—Waco, 2007) (holding that the Texas Due Course of Law provision provides a greater level of protection with regard to lost or destroyed evidence than does the Due Process Clause of the Fourteenth Amendment), *overruled on other grounds* No. PD-1411-07, 2009 WL 928594, at *3 (Tex. Crim. App. Apr.8, 2009) ("*Pena IV*"). Relying on that premise, Salazar asks this court to further hold that the beer bottle was subject to

7

discovery; that the State had a duty to preserve the beer bottle; and that the officers in this case acted in bad faith by leaving the beer bottle on the side of the road. The State argues that the Texas Due Course of Law Clause affords no greater protection than the federal Due Process Clause. Thus, the State argues, this court should overrule Salazar's first point because there is no evidence that the officers in this case acted in bad faith.

In determining whether the pre-trial destruction of evidence constitutes a denial of due process of law under the United States Constitution, the Supreme Court draws a distinction between "material exculpatory evidence" and "potentially useful evidence." *See Arizona v. Youngblood*, 488 U.S. 51, 57–58, 109 S. Ct. 333, 337 (1988). A federal due process violation occurs whenever a state suppresses or fails to disclose "material exculpatory evidence," regardless of whether the State acted in bad faith. *Illinois v. Fisher*, 540 U.S. 544, 547, 124 S. Ct. 1200, 1201 (2004). But the Supreme Court has held that if a defendant seeks to prove a federal due process violation based on a state's destruction of "potentially useful evidence," the defendant must show that the State acted in bad faith in destroying the evidence. *Fisher*, 540 U.S. at 547–48; *Youngblood*, 488 U.S. at 57–58. In *Youngblood*, the Court described "potentially useful evidence" as evidentiary material "of which no more can be said than that it could have been subjected to tests, the results

8

of which might have exonerated the defendant." *Youngblood*, 488 U.S. at 57–58.

The Texas Constitution provides that "[n]o citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land." Tex. Const. art. I, § 19. A number of Texas courts of appeals, including this court, have held that the Texas Constitution does not provide a greater level of protection than the United States Constitution regarding the State's loss or destruction of evidence in a criminal prosecution. *See Jackson v. State*, 50 S.W.3d 579, 588–89 (Tex. App.—Fort Worth 2001, pet. ref'd); *see also State v. Vasquez*, 230 S.W.3d 744, 750–51 (Tex. App.—Houston [14th Dist.] 2007, no pet.); *McGee v. State*, 210 S.W.3d 702, 705 (Tex. App.—Eastland 2006, no pet.); *Salazar v. State*, 185 S.W.3d 90, 92 (Tex. App.—San Antonio 2005, no pet.); *State v. Rudd*, 871 S.W.2d 530, 533 (Tex. App.—Dallas 1994, no pet.); *Saldana v. State*, 783 S.W.2d 22, 23 (Tex. App.—Austin 1990, no pet.). But Salazar asks this court to abandon our own holding and the holding of the other Texas courts of appeals in favor of adopting the Waco Court of Appeals' opinion holding that the Texas Due Course of Law Clause affords greater protection than the federal Due Process Clause. *See Pena v. State*, 166 S.W.3d 274 (Tex. App.—Waco 2005) ("*Pena I*"), *vacated by* 191 S.W.3d 133,

9

145–46 (Tex. Crim. App. 2006) (vacating and remanding opinion back to court of appeals) ("*Pena II*"); *see also Pena*, 226 S.W.3d at 637–53 (*"Pena III"*).

In *Pena I*, the Waco Court of Appeals held that the Due Course of Law Clause provides a greater level of protection than the Due Process Clause. *See* U.S. Const. amends. V; XIV, § 1; Tex. Const. art. I, § 19; *Pena I*, 166 S.W.3d at 278–82. The court of criminal appeals held that the Waco Court of Appeals erred by reviewing unassigned error regarding the Due Course of Law Clause without first requesting additional briefing. *See Pena II*. On remand, the Waco Court of Appeals in *Pena III* engaged in a lengthy analysis of the two provisions and again held that the Due Course of Law Clause provides a greater level of protection than the Due Process Clause. *See Pena III*. The court of criminal appeals reversed, holding that the defendant had failed to preserve the argument concerning whether the Due Course of Law Clause provides a greater level of protection than the Due Process Clause. *See Pena IV*. Thus, the court of criminal appeals has not addressed whether our state's Constitution provides greater protection than its federal counterpart. Notably, the Supreme Court of Texas has stated that the language of these two clauses is "nearly identical" and that there is no meaningful distinction between "due course" and "due process." *See Univ. of Tex. Med. Sch. at Houston v. Than*, 901 S.W.2d 926, 929 (Tex. 1995).

Other than the Waco Court of Appeals' opinions in *Pena I* and *Pena III*, no other Texas appellate court's opinion contradicts this court's precedent that the two provisions provide the equivalent protection. *See Jackson*, 50 S.W.3d at 588–89; *see also State v. Vasquez*, 230 S.W.3d 744, 751 (Tex. App.—Houston[14th Dist.] 2007, no pet.) (declining to follow *Pena I* or *Pena III*). After considering the opinions in *Pena I* and *Pena III*, we respectfully decline to follow them. We agree with our previous holding and the holding of other Texas courts of appeals that the Due Course of Law Clause provides the same protection as the Due Process Clause regarding the State's destruction of potentially useful evidence in a criminal prosecution. Therefore, to show a violation, Salazar must demonstrate that the State acted in bad faith. *See Jackson*, 50 S.W.3d at 588–89.

Here, assuming that Foley leaving the beer bottle at the scene was tantamount to the destruction of evidence, there is no evidence that Foley's having left the beer bottle was the result of bad faith. Foley testified that it was his department's policy to "not seize alcoholic beverage containers as a standard practice." There is no evidence in the record to contradict Foley's testimony. Accordingly, we conclude and hold that Salazar cannot demonstrate bad faith, and we overrule his first point.

11

**B.    Horizontal Gaze Nystagmus Test**

In his second point, Salazar argues that the trial court erred by failing to sustain his objection to Foley's testimony regarding the HGN test. Salazar's argument is that the State failed to establish that Foley was qualified to perform the HGN test and that therefore it was harmful error to allow Foley to testify concerning Salazar's performance on the HGN test. We disagree.

Whether a particular witness qualifies as an expert is a decision to be made by the trial judge, and the trial judge has broad discretion in this area. *Sterling v. State*, 800 S.W.2d 513, 521 (Tex. Crim. App. 1990), *cert. denied*, 501 U.S. 1213 (1991); *Kerr v. State*, 921 S.W.2d 498, 502 (Tex. App.—Fort Worth 1996, no pet.). A trial court's decision in this area will not be disturbed absent an abuse of discretion. *Sterling*, 800 S.W.2d at 521. For testimony concerning a defendant's performance on the HGN test to be admissible, it must be shown that the witness testifying is qualified as an expert on the HGN test. *Kerr*, 921 S.W.2d at 502.

In this case, Foley testified that he had been a police officer since 1992. Foley said that in 1995 he attended an extensive field sobriety testing school. As part of the training, he conducted field sobriety tests on multiple test subjects. He testified that he is certified to administer field sobriety tests. Foley said that in the last year he had attended two four-hour standard field

12

sobriety courses. Foley testified that while at these classes, he had practiced the HGN test roughly fifty times. He also said that he had performed the HGN test between 200 and 300 times in the field. Foley also fully explained the technique for administering the HGN test. We conclude and hold that the trial court did not abuse its discretion by overruling Salazar's objection to Foley's testimony regarding Salazar's performance on the HGN test. We overrule Salazar's second point.

### C. Trial Judge's Comments to Defense Counsel

In his third point, Salazar complains that the trial judge's comments that defense counsel was to provide a "very concise legal basis" for any future motions for mistrial placed Salazar "at an unfair disadvantage and undermined [defense counsel's] zealous representation," thereby denying him his "right to due process and a fair trial." Salazar admits that "there are no cases directly on point with the issue at hand." Nonetheless, Salazar likens the trial judge's comments in this case to a trial judge's attempts to, within its discretion, regulate the duration of argument to the jury or move its docket along. *See Dang v. State*, 154 S.W.3d 616, 621–22 (Tex. Crim. App. 2005) (holding that trial court abused its discretion in limiting juvenile defendant's closing argument to twenty minutes). And, Salazar argues, the trial court abused its discretion. *See id*. The State counters that Salazar has failed to preserve this error

13

because he never specifically objected that the trial court's admonishment "would interfere [] in any way with [defense counsel's] zealous representation." *See* Tex. R. App. P. 33.1. We will assume without deciding that Salazar has preserved this error.

A trial court has broad discretion in maintaining control and expediting the trial. *Jasper v. State*, 61 S.W.3d 413, 421 (Tex. Crim. App. 2001). But the trial court shall maintain an attitude of impartiality throughout the trial. *Hoang v. State*, 997 S.W.2d 678, 680 (Tex. App.—Texarkana 1999, no pet.). We agree with Salazar's characterization of the trial judge's comments in this case as an attempt to expedite and maintain control over the trial and exercise reasonable control over the mode and order of the presentation of evidence. *See Jasper*, 61 S.W.3d at 421. But we do not agree that the trial court's admonishment to defense counsel—made outside the presence of the jury—in any way denied Salazar his right to due process and a fair trial; rather, the comments appear to be simply an attempt to avoid the needless consumption of time. *See Hoang*, 997 S.W.2d at 681–82 (holding that trial court's comments to defense counsel to "[q]uit being repetitious" and "[l]et's get to the point" were acceptable attempts to move the trial along). We overrule Salazar's third point.

## IV. Conclusion

Having overruled all three of Salazar's points, we affirm the trial court's judgment.

BILL MEIER
JUSTICE

PANEL:  LIVINGSTON, WALKER, and MEIER, JJ.

WALKER, J. concurs without opinion.

PUBLISH

DELIVERED:  July 23, 2009

15