

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-09-00175-CR

ANTHONY LEE WILLIAMS                                    APPELLANT

V.

THE STATE OF TEXAS                                          STATE

------------

### FROM THE 78TH DISTRICT COURT OF WICHITA COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I. INTRODUCTION

Appellant Anthony Lee Williams pleaded guilty to possession of a controlled substance. Williams also pleaded true to an enhancement paragraph regarding a prior controlled substance conviction. At sentencing, the court found true the State's allegation that Williams committed the extraneous offense of possessing a firearm while a felon and later sentenced Williams to fifteen years'

---

[1]*See* Tex. R. App. P. 47.4.

confinement in the Texas Department of Criminal Justice Institutional Division. In two issues, Williams contends first that the State failed to prove beyond a reasonable doubt the extraneous offense of possession of a firearm by a felon and second that his constitutional right to due process was denied when the State failed to inform Williams that evidence had been destroyed. We will affirm.

## II. BACKGROUND

The Wichita Falls Police Department ("WFPD") executed a search warrant on a home located at 108 Farris Street on March 1, 2007. Police found Williams inside the kitchen with crack cocaine in plain view on the kitchen table in close proximity to Williams. Officers additionally found Ecstasy pills in the back bedroom.

On December 12, 2007, SWAT executed another warrant on the same premises. Officer Vermillion, the first to enter the room, observed Williams standing at the foot of the bed with his hands up. Vermillion ordered him to lie on the bed. Officer Eipper testified that he observed Williams lying on a bed as the sole occupant in the bedroom. Officers recovered mail with Williams's name on it in the bedroom, along with a .22 caliber revolver on a surface near the bed.

WFPD again executed a warrant on the same house on October 14, 2008. Williams was found behind the home with crack cocaine in his pocket.[2]

---

[2]As a result of the searches, the State charged Williams with two counts of possession of a controlled substance and one count of possessing a firearm while still a felon. Williams pleaded guilty to one of the possession charges and proceeded to trial on the other two remaining charges. The State then decided to

2

At the punishment hearing, Officer Gerald Shulte of the WFPD testified regarding the search warrant executed on December 12, 2007. Schulte testified that the SWAT team made entry for the police and found Williams in the bedroom with the mail and the loaded revolver. Schulte did not see Williams in the bedroom himself, but he did see the revolver and believed it was located on a nightstand next to the bed or the headboard. Schulte said the mail in the bedroom had Williams's name on it, but he was not sure if the address on the mail was 108 Farris Street.

Officer Charles Eipper testified that he was a member of the SWAT team that executed the December 12 search warrant. Eipper testified that he saw Williams on the bed in the bedroom and also saw the revolver in plain view lying on a shelf within reach of someone on the bed. Officer Walter Vermillion testified that he was also a member of the SWAT team executing the December 12 warrant and that he also saw Williams in the bedroom with the revolver either next to the bed or on the shelf.

Officer Karl King of the WFPD narcotics unit testified that on December 12, he searched the premises after the house was emptied of all occupants. King testified that he found the .22 caliber revolver loaded with a single round on top

dismiss the remaining two charges and use them at punishment only. But the dismissals were not the result of a plea bargain; thus, we have jurisdiction to address Williams's issues on appeal. *See Shankle v. State*, 119 S.W.3d 808, 813 (Tex. Crim. App. 2003) (holding that open plea resulting from State's agreement to dismiss other charges can be plea bargain prohibiting right of appeal).

of two VCR tapes on the headboard of the bed in the same room where Williams was found. King also testified that he located mail belonging to Williams in the same room. Upon cross-examination, King said that the gun and mail had been destroyed pursuant to a destruction order prior to the time of the sentencing hearing. The court found that the State had proved the extraneous offense beyond a reasonable doubt. This appeal followed.

### III. ANALYSIS

#### A. Extraneous Offense

In his first issue, Williams argues the trial court erred by finding that he committed the unadjudicated extraneous offense of unlawful possession of a firearm by a felon and that the court thus abused its discretion by considering the offense when assessing Williams's punishment.

Article 37.07, section 3(a)(1) of the Texas Code of Criminal Procedure provides in relevant part that regardless of the plea and whether the punishment is assessed by the judge or jury, evidence may be offered by the State and the defendant as to any matter the court deems relevant to sentencing, including evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt to have been committed by the defendant, regardless of whether he has previously been charged with or finally convicted of the crime or act. Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1) (Vernon Supp. 2010). Williams faced three separate charges at trial, one of which was unlawful possession of a firearm by a felon, a charge the State agreed to dismiss and instead use only as punishment

4

evidence. Section 46.04 of the Texas Penal Code provides in part that a person commits the offense of unlawful possession of a firearm by a felon if the defendant was previously convicted of a felony offense and possessed a firearm after the conviction and before the fifth anniversary of the person's release from confinement. Tex. Penal Code Ann. § 46.04 (Vernon Supp. 2010). The record establishes that Williams was released from incarceration in 2004 after being convicted for the felony offense of delivery of a controlled substance.

The penal code defines possession as "actual care, custody, control, or management." *Id.* § 1.07(a)(39) (Vernon Supp. 2010). A person commits a possession offense only if he voluntarily possesses the prohibited item. *Id.* § 6.01(a) (Vernon 2003). Possession is voluntary if the possessor knowingly obtains or receives the thing possessed or is aware of his control of the thing for a sufficient time to permit him to terminate his control. *Id.* § 6.01(b).

The State's evidence must establish that the accused's connection with the firearm was more than just fortuitous. *Brown v. State*, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995). If the firearm is not found on the defendant's person or is not seen in the defendant's exclusive care, custody, control, or management, as in this case, the State must offer additional, independent facts and circumstances that link the defendant to the firearm. *Bates v. State*, 155 S.W.3d 212, 216–17 (Tex. App.—Dallas 2004, no pet.); *see Sutton v. State*, 328 S.W.3d 73, 76 (Tex. App.—Fort Worth 2010, no pet.) (citing *Villarreal v. State*, Nos. 02-07-00329-CR, 02-07-00330-CR, 2009 WL 671042, at *1 (Tex. App.—Fort Worth

5

Mar. 12, 2009, pet. ref'd) (mem. op., not designated for publication) ("The . . . links doctrine also applies to the possession of firearms.")). The purpose of linking the accused to the firearm is to protect innocent bystanders from conviction solely on their fortuitous proximity to the firearm. *See Poindexter v. State*, 153 S.W.3d 402, 406 (Tex. Crim. App. 2005). Such links may be established by either direct or circumstantial evidence. *Evans v. State*, 202 S.W.3d 158, 161–62 (Tex. Crim. App. 2006).

An appellate court examines factors such as whether the firearm was in plain view, whether the defendant owned the premises where the firearm was found, whether the defendant made incriminating statements, whether the defendant was in close proximity to the firearm and had ready access to it, whether the defendant attempted to flee, whether the defendant's conduct indicated a consciousness of guilt, whether the defendant had a special connection to the firearm, and whether the firearm was found in an enclosed space. *Smith v. State*, 176 S.W.3d 907, 916 (Tex. App.—Dallas 2005, pet. ref'd); *see Westbrook v. State*, No. 02-07-00455-CR, 2008 WL 5672533, at *4 (Tex. App.—Fort Worth Feb. 26, 2009, pet. ref'd) (mem. op., not designated for publication). Significantly, it is the logical force of the factors, not the number of factors present, that determines whether the elements of the offense have been established. *See Smith*, 176 S.W.3d at 916.

Thus, we turn to the evidence that would affirmatively link Williams to the firearm in such a manner and to such an extent that a reasonable inference may

arise that Williams knew of the existence of the firearm and that he exercised control over the firearm. The primary source of evidence presented in this case to establish affirmative links was testimony by witnesses present at the scene. Williams claims the testimony was conflicting. In this regard, we recognize that the factfinder is the sole judge of the credibility of the witnesses and may accept or reject any part or all of the testimony given by State or defense witnesses. *Johnson v. State*, 23 S.W.3d 1, 9 (Tex. Crim. App. 2000). With this in mind, we view the evidence in the light most favorable to the verdict.

Several facts link Williams to the revolver found at 108 Farris Street. First, Williams was the only occupant in the bedroom where the revolver was located when police entered the home. The first officer who entered the bedroom, Vermillion, testified that Williams was standing at the foot of the bed and that in order to secure the premises, Williams was ordered onto the bed. There was no one else present in the bedroom at the time officers entered and found Williams. Second, the revolver was in plain view. All officers testified that the revolver was immediately visible on a surface directly next to the bed. Third, while Williams did not own the house, there is no dispute that he was residing at 108 Farris Street and according to Williams' own briefing, "the testimony should lead one to believe it was his residence." Not only had Williams been named on prior search warrants executed on the home, but there was also mail found in the bedroom at the Farris Street address with Williams's name on it. For purposes of our analysis here, the facts indicate that Williams was a resident of the property

7

where the revolver was located.  Finally, while Williams contends that he was only in close proximity to the revolver such that he had ready access to the firearm because he was ordered onto the bed by officers, this argument is unavailing.  "Ready access" does not mean immediate access, and the fact remains that the revolver was found in an enclosed bedroom, within which Williams was the only occupant, and that the gun was readily available as it lay out in the open.  *See Ramos v. State*, Nos. 02-07-00118-CR, 02-07-00119-CR, 2008 WL 623777, at *7 (Tex. App.—Fort Worth Mar. 6, 2008, pet. ref'd) (mem. op., not designated for publication) (holding that evidence was sufficient to support conviction for unlawful possession of firearm when assault rifle was found in master bedroom closet, which appellant shared with his wife); *Smith v. State*, No. 12-06-00021-CR, 2007 WL 2178541, at *3 (Tex. App.—Tyler July 31, 2007, no pet.) (mem. op., not designated for publication) (holding that evidence was sufficient to support conviction for unlawful possession of firearm when pistol was found in plain view in linen closet next to bedroom where appellant slept); *Austin v. State*, Nos. 14-00-01389-CR, 14-00-01390-CR, 2002 WL 370045, at *3 (Tex. App.—Houston [14th Dist.] Mar. 7, 2002, no pet.) (not designated for publication) (holding that evidence was sufficient to support conviction for unlawful possession of firearm that officers found in bedroom closet because closet contained mail addressed to appellant); *Holland v. State*, Nos. 05-99-00821-CR, 05-99-00822-CR, 2002 WL 115582, at *7 (Tex. App.—Dallas Jan. 30, 2002, pet. ref'd) (not designated for publication) (holding that evidence was

8

sufficient to support conviction for unlawful possession of firearm that officers found in back center closet which was accessible to appellant).

Viewing all the evidence in the light most favorable to the verdict and giving due deference to the factfinder's responsibility to resolve conflicts in testimony, weigh the evidence, and draw reasonable inferences, we find that the evidence is sufficient to support the trial court's finding that Williams committed the extraneous offense of unlawful possession of a firearm by a felon and thus the trial court properly considered the offense in Williams's sentencing. We overrule Williams's first issue.

## B. Preservation of Evidence

In his second issue, Williams argues that the State violated his constitutional right of due process by failing to disclose that evidence found at the scene, namely the revolver and mail, had been destroyed prior to trial. Williams argues that this failure amounted to a *Brady* violation because it prevented counsel from adequately advising his client. *Brady v. Maryland*, 373 U.S. 83, 87 S. Ct. 1194, 1196–97 (1963). We disagree with Williams that the State's destruction of the mail and revolver prior to trial violated his right of due process.

In determining whether the pretrial destruction of evidence constitutes a denial of due process of law under the United States Constitution, the Supreme Court draws a distinction between "material exculpatory evidence" and "potentially useful evidence." *Salazar v. State*, 298 S.W.3d 273, 277–78 (Tex. App.—Fort Worth 2009, pet. ref'd) (quoting *Arizona v. Youngblood*, 488 U.S. 51,

57–58, 109 S. Ct. 333, 337 (1988)).  A federal due process violation occurs whenever a state suppresses or fails to disclose "material exculpatory evidence," regardless of whether the State acted in bad faith.  *Id. at* 278 (quoting *Illinois v. Fisher*, 540 U.S. 544, 547, 124 S. Ct. 1200, 1201 (2004)).  But the Supreme Court has held that if a defendant seeks to prove a federal due process violation based on a state's destruction of "potentially useful evidence," the defendant must show that the State acted in bad faith in destroying the evidence.  *Id.* (citing *Fisher*, 540 U.S. at 547–48, 124 S. Ct. at 1202; *Youngblood*, 488 U.S. at 57–58, 109 S. Ct. at 337).  "Potentially useful evidence" is described as evidentiary material "of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant."  *Id.* (quoting *Youngblood*, 488 U.S. at 57–58, 109 S. Ct. at 337).  Supreme Court jurisprudence further divides cases involving nondisclosure of evidence into two areas:

(a)    *Brady* addresses exculpatory evidence still in the government's possession.  *Little v. State*, 991 S.W.2d 864, 866 (Tex. Crim. App. 1999) (citing *Brady*, 373 U.S. at 90, 83 S. Ct. at 1198);

(b)    *Youngblood* and *Trombetta* address cases in which the government no longer possesses the disputed evidence.  *Little*, 991 S.W.2d at 866*.* (citing *California v. Trombetta*, 467 U.S. 479, 104 S. Ct. 2528 (1984)).

10

Under this paragraph, when a defendant is alleging that the State failed to disclose *the fact that* it had lost or destroyed evidence, such information is considered evidence in the possession of the State and his claim still falls under *Brady* and its progeny; thus, it must be shown that: (1) the prosecutor failed to disclose evidence, (2) the evidence is favorable to the defendant, and (3) the evidence is material, such that there is a reasonable probability that had the evidence been disclosed to the defense, the outcome of the trial would have been different. *United States v. Bagley*, 473 U.S. 667, 682, 105 S. Ct. 3375, 3383 (1985).

To the extent Williams argues that he was denied the opportunity for a fair trial based on the destruction of the evidence because "no one knows what the weapon bears (fingerprints) or whether it [was] operable because it was destroyed," Williams fails to meet his burden under *Youngblood*. In order to prevail on this claim, Williams must show more than that the gun could have been subjected to additional tests which may potentially have led to exculpatory results. Additionally, there is no evidence to indicate the State acted in bad faith when destroying the gun and mail prior to trial. To the contrary, Williams himself admits that "there is no indication that the destruction of the evidence was done in bad faith," and Williams's counsel elicited testimony that the State's destruction of both the gun and the mail was pursuant to a court order. Because Williams has failed to show that the State destroyed potentially useful evidence in bad faith, we overrule this issue.

11

As an ancillary point, Williams contends that the Texas Constitution's Due Course of Law Clause provides a greater level of protection than the Due Process Clause of the Fourteenth Amendment. But a number of Texas courts of appeals, including this court, have held that the Texas Constitution does not provide a greater level of protection than the United States Constitution regarding the State's loss or destruction of evidence in a criminal prosecution. *See Salazar*, 298 S.W.3d at 278–79; *Jackson v. State*, 50 S.W.3d 579, 588–89 (Tex. App.—Fort Worth 2001, pet. ref'd); *see also State v. Vasquez*, 230 S.W.3d 744, 750–51 (Tex. App—Houston [14th Dist.] 2007, no pet.); *McGee v. State*, 210 S.W.3d 702, 705 (Tex. App.—Eastland 2006, no pet.); *Salazar v. State*, 185 S.W.3d 90, 92 (Tex. App.—San Antonio 2005, no pet.); *State v. Rudd*, 871 S.W.2d 530, 533 (Tex. App.—Dallas 1994, no pet.); *Saldana v. State*, 783 S.W.2d 22, 23 (Tex. App.—Austin 1990, no pet.). We agree with our previous holding and the holding of our sister courts of appeals that the Due Course of Law Clause in the Texas Constitution provides the same protection as the Due Process Clause in the United States Constitution regarding claims that the State's destruction of potentially useful evidence in a criminal prosecution constitutes a constitutional violation. Williams is required to demonstrate that the State acted in bad faith, which he has not done.

To the extent that Williams argues that he was denied a fair trial based on the State's alleged failure to disclose *the fact that* the gun and mail were destroyed prior to trial, this argument also fails. There is no evidence in the

12

record to support the claim that the State failed to disclose the fact that the gun and mail had been destroyed. Defense counsel elicited the information upon cross-examination of Officer King. Although Williams now alleges on appeal that this testimony was the first time he learned the evidence had been destroyed, trial counsel did not object at trial seeking exclusion for nondisclosure, nor did he request a continuance to allow time to develop the facts regarding the destruction at any time after eliciting the testimony regarding the destroyed evidence. *State v. Fury*, 186 S.W.3d 67, 73–74 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd) ("A defendant's failure to request a continuance indicates that the tardy disclosure of evidence was not prejudicial."). Because Williams cannot meet the first prong under *Brady*, which requires a showing that the State failed to disclose the fact that the evidence had been destroyed, we overrule his second issue.

## IV. Conclusion

Having overruled Williams's two issues, we affirm the trial court's judgment.

BILL MEIER
JUSTICE

PANEL: MCCOY, MEIER, and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: May 12, 2011

13