02-09-215-CR_REMAND









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-09-00215-CR

 

 


 
 
 Mark Fleming
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

 

----------

FROM THE 158th
District Court OF Denton COUNTY

----------

OPINION ON REMAND

 

----------

I.  Introduction

Appellant
Mark Fleming entered a negotiated plea of guilty to four counts of aggravated
sexual assault of a child younger than fourteen years of age.[1] 
The trial judge sentenced Fleming to ten years’ confinement, suspended
imposition of the sentence, and placed him on ten years’ community supervision.
 Among the conditions of punishment, Fleming must register as a sex offender.

Before
trial, Fleming filed a motion to quash the indictment, challenging the
constitutionality of Texas Penal Code section 22.021 under the Due Process
Clause to the United States Constitution and the due course of law provision to
the Texas Constitution.[2]  In his motion, Fleming
claimed that the statute is unconstitutional because it does not have a mens rea
requirement and does not permit the affirmative defense of mistake of fact.  The
trial judge denied the motion.

          Following
sentencing, Fleming appealed the trial judge’s ruling to this court.  Fleming
v. State, 323 S.W.3d 540 (Tex. App.—Fort Worth 2010), vacated, 341
S.W.3d 415 (Tex. Crim. App. 2011).  We held that under the Due Process Clause,
the statute is constitutional.  Id. at 547.  This court declined,
however, to address Fleming’s due course of law claim, holding that Fleming
failed to preserve the issue for appeal because he failed to assert or brief
“an argument that the due course of law analysis under the Texas constitution
is different or provides greater protections” than the Due Process Clause.  Id.
at 542.

On
June 13, 2011, the Texas Court of Criminal Appeals vacated this court’s
judgment, holding that our conclusion that Fleming had failed to preserve his
due course of law argument “was improvident.”  Fleming v. State, 341
S.W.3d at 416.  Because this court has already decided that the due course of
law provision provides the same protections as the Due Process Clause, and
because we conclude that Texas Penal Code section 22.021 does not violate Due
Process, we will again affirm.  See Salazar v. State, 298 S.W.3d 273,
277–78 (Tex. App.—Fort Worth 2009, pet. ref’d) (holding that the State
constitution’s due course of law provision does not provide a greater level of
protection than the United States Constitution’s Due Process Clause).

II.  Discussion

In
four points,[3] Fleming argues that the
Texas Penal Code provision under which he was convicted, section 22.021, is
unconstitutional under the federal Due Process Clause and the Texas due course
of law provisions because of its “failure to require the State to prove that
[Fleming] had a culpable mental state (‘mens rea’) relating to the
alleged victim’s age when engaging in the conduct alleged” and “its failure to
recognize an affirmative defense based on [Fleming’s] reasonable belief that
the alleged victim at the time was 17 years of age or older.”[4] 
We disagree.

The
federal constitution provides:  “No State shall . . . deprive
any person of life, liberty, or property, without due process of law . . . . 
U.S. Const. amends. V, XIV, § 1.  Our state constitution provides:  “No
citizen of this State shall be deprived of life, liberty, property, privileges
or immunities, or in any manner disfranchised, except by the due course of the
law of the land.”  Tex. Const. art. I, § 19.

A.      Scope
of the Due Course of Law Provision

This
court has already had the occasion to address the question of whether this
State’s due course of law provision provides the same, more, or less protection
than the federal Due Process Clause.  Salazar, 298 S.W.3d at 277–78.  As
we stated in Salazar, this court’s holding that the two provisions
provide the same protections is predicated on the Supreme Court of Texas’s
holding that the two clauses are nearly identical and contain no meaningful
distinctions in their respective clauses.  Id. at 279–80 (citing Univ.
of Tex. Med. Sch. at Houston v. Than, 901 S.W.2d 926, 929 (Tex. 1995)).  Furthermore,
this court and the majority of Texas courts of appeals have repeatedly held
that the due course of law provision provides the same protections as the
federal Due Process Clause.  See, e.g., State v. Vasquez, 230
S.W.3d 744, 751 (Tex. App.—Houston [14th Dist.] 2007, no pet.); Salazar v.
State, 185 S.W.3d 90, 92–93 (Tex. App.—San Antonio 2005, no pet.); Jackson
v. State, 50 S.W.3d 579, 588–89 (Tex. App.—Fort Worth 2001, pet. ref’d); State
v. Rudd, 871 S.W.2d 530, 532–33 (Tex. App.—Dallas 1994, no pet.); Saldana
v. State, 783 S.W.2d 22, 23 (Tex. App.—Austin 1990, no pet.).

We
conclude that nothing that Fleming briefed to this court, nor anything that he
briefed in his motion to the trial court, nor anything that he briefed
regarding this issue in his briefing on remand is distinct or different in any meaningful
way from the arguments that this court has already considered on this issue when
reaching our previous holdings.  See Salazar, 298 S.W.3d at 277–78; Jackson,
50 S.W.3d at 588–89.  Certainly, nothing in Fleming’s arguments persuades us
that our precedent on this matter should be overturned.  See Proctor v.
State, 967 S.W.2d 840, 844–45 (Tex. Crim. App. 1998) (reasoning that the
doctrine of stare decisis should generally be followed because it
promotes “judicial efficiency and consistency, . . . reliance
on judicial decisions, and [it] contribute[s] to the actual and perceived
integrity of the judicial process.”).

Furthermore,
this court agrees with Judge Keasler’s position that even though the court of
criminal appeals has never rendered an opinion on either the scope of the due
course of law provision or “the substantive rights and protections” it
provides, given longstanding precedent that application of the due course of
law provision be guided by cases from the Supreme Court of the United States,
there exists “no reason to reach a contrary conclusion with respect to
substantive rights and protections.”  Fleming, 341 S.W.3d at 416 (Keasler,
J., concurring).  This approach of treating procedural due process and
substantive due process concerns with the equal application of law is founded
on the axiomatic conclusion that the texts of both the due course of law
provision and the Due Process Clause are virtually identical.  Than, 901
S.W.2d at 929 (“While the Texas Constitution is textually different in that it
refers to ‘due course’ rather than ‘due process,’ we regard these terms as
without meaningful distinction.”).  Thus, it would make little sense to treat
substantive due process claims any differently than procedural due process
claims.  We therefore will address Fleming’s arguments regarding due course of
law or due process under federal law, regardless of whether his claims are
substantive or procedural in nature.  See Id.; Rose v. State, 752
S.W.2d 529, 536–37 (Tex. Crim. App. 1987) (McCormick, J., dissenting), superseded
by statute; Thompson v. State, 626 S.W.2d 750, 753 (Tex. Crim. App. [Panel
Op.] 1981); Ex parte Quintanilla, 151 Tex. Crim. 328, 330, 207
S.W.2d 377, 378–79 (1947); Huntsman v. State, 12 Tex. App. 619, 625–50
(1882); see also Nat’l Collegiate Athletic Ass’n v. Yeo, 171 S.W.3d 863,
867–68 (Tex. 2005).

B.      Substantive
Due Process and Texas Penal Code 22.021

Even
though Fleming does not refer to his claims as being either procedural or
substantive due process arguments, he does not argue that the process depriving
him of his liberty is deficient; rather, Fleming argues that the absence of a mens rea
or mistake-of-age component to section 22.021 is a wrongful government action
irrespective of the procedure in place to guarantee fairness.  Thus, we
interpret Fleming’s arguments to be substantive due process claims.  See
Zinermon v. Burch, 494 U.S. 113, 124–25, 110 S. Ct. 975, 982–83
(1990).

Substantive
due process protects citizens against arbitrary or wrongful state actions,
regardless of the fairness of the procedures used to implement them.  Cnty.
of Sacramento v. Lewis, 523 U.S. 833, 845–46, 118 S. Ct. 1708, 1716
(1998).  In assessing whether a government regulation impinges on a substantive
due process right, the first step is to determine whether the asserted right is
fundamental.  See Leebaert v. Harrington, 332 F.3d 134, 140 (2d Cir.
2003) (discussing two-step process in analyzing a substantive due process
claim).  Rights are fundamental when they are implicit in the concept of
ordered liberty or deeply rooted in this nation’s history and tradition.  Immediato
v. Rye Neck Sch. Dist., 73 F.3d 454, 460–61 (2d Cir.), cert. denied,
519 U.S. 813 (1996) (citing Moore v. East Cleveland, 431 U.S. 494, 503,
97 S. Ct. 1932, 1938 (1977)).  Where the right infringed is fundamental,
strict scrutiny is applied to the challenged governmental regulation.  Reno
v. Flores, 507 U.S. 292, 305, 113 S. Ct. 1439, 1448 (1993).  But where
the claimed right is not fundamental, the governmental regulation need only be
reasonably related to a legitimate state objective to survive constitutional
review.  Flores, 507 U.S. at 306, 113 S. Ct. at 1449.  Thus, our
first inquiry is to determine whether there is a fundamental right entitling
individuals to a mens rea component or a mistake-of-age defense in
a statutory rape scheme.

It
is a basic principle of criminal law that an actor should not be convicted of a
crime if he had no reason to believe that the act he committed was a crime or
that it was wrongful.  Morissette v. United States, 342 U.S. 246, 252,
72 S. Ct. 240, 244 (1952).  An intent requirement was the general rule at
common law.  Id.  To be sure, the absence of a mens rea
requirement in a criminal statute is a significant departure from longstanding
principles of criminal law.  Staples v. United States, 511 U.S. 600,
605, 114 S. Ct. 1793, 1797 (1994).  Nevertheless, strict liability crimes—crimes
defined without any culpable state of mind—are known at law.  Id.  When
strict liability is imposed, the actor is deemed to have had sufficient notice
concerning the risk of penal sanction inherent in the proscribed activity, and
it is therefore just to impose criminal liability without the necessity of
proving moral culpability.  United States v. Freed, 401 U.S. 601, 613
n.4, 91 S. Ct. 1112, 1120 n.4 (1971).  It has been written that “the
existence and content of the criminal prohibition in these cases are not
hidden; the defendant is warned to steer well clear of the core of the offense
(as in the statutory-rape case).”  United States v. Wilson, 159 F.3d
280, 296 (7th Cir. 1998) (Posner, C.J., dissenting).

To
this end, state legislatures have broad powers to promote the public welfare
and to create criminal offenses and impose punishment, including the power to
define an offense that excludes the element of mental culpability from its
definition.  Lambert v. California, 355 U.S. 225, 228, 78 S. Ct.
240, 242 (1957).  Indeed, a state legislature is free to define a criminal
offense and bar consideration of a particular defense so long as due process is
not offended.  Montana v. Egelhoff, 518 U.S. 37, 43, 116 S. Ct.
2013, 2017 (1996) (quoting Patterson v. New York, 432 U.S. 197, 201–02,
97 S. Ct. 2319, 2322 (1977)).  And it is widely recognized that adults are
well aware of the strict liability aspect of statutory rape laws.  See State
v. Jadowski, 680 N.W.2d 810, 821 n.42 (Wis. 2004) (discussing the
colloquial phrase “[s]ixteen will get you twenty!” as a common exclamation
expressing the widespread awareness of statutory rape laws and the strict
liability aspect of the offense).

The
strict liability crime of statutory rape, in which the victim’s apparent
maturity is not a defense, is a recognized exception to the general rule
requiring mens rea in criminal statutes.  Jadowski, 680
N.W.2d at 821.  Traditionally, according to the weight of authority, “mistake
as to age” has also not been a defense against the charge of statutory rape.  Morissette,
342 U.S. at 251 n.8, 72 S. Ct. at 244 n.8.;  United States v. X–Citement
Video, Inc., 513 U.S. 64, 72 n.2, 115 S. Ct. 464, 469 n.2 (1994).

Fleming
argues that because the federal Due Process Clause and the state due course of
law provisions were passed at a time when there existed a mens rea
component to statutory rape laws in this nation, the lack of a mental
culpability component offends “principle[s] of justice so rooted in the
traditions and conscience of our people as to be ranked as fundamental.”  But
the rule of tradition and conscience, or the guide of “historical practice,” is
not a first-in-time, bright-line rule.  Egelhoff, 518 U.S. at 43, 116 S. Ct.
at 2017.  For example, the fundamental right to “engage in [sexual] conduct”
without intervention of the government between consenting same-sex adults is
hardly a concept that existed prior to the adoption of either due process
provision; nonetheless, the Supreme Court, in overruling its previous holding,
held this to be a fundamental right under substantive due process.  See
Bowers v. Hardwick, 478 U.S. 186, 191–92, 106 S. Ct. 2841, 2844
(1986), overruled by Lawrence v. Texas, 539 U.S. 558, 567, 123 S. Ct.
2472, 2478 (2003).  This is so because this right is implicit in the concept of
ordered liberty, even though “there have been powerful voices [condemning]
homosexual conduct as immoral for centuries.”  Lawrence, 539 U.S. at
571, 123 S. Ct. at 2480.  “Historical practice” is a probative guide to
the ordered-liberty and deeply-rooted approach in determining fundamental
rights, but it is a starting point only and not the absolute determining guide
to whether a right is fundamental.  Medina v. California, 505 U.S. 437,
446, 112 S. Ct. 2572, 2577 (1992).

Fleming
argues that Lawrence v. Texas actually supports his position because due
process “extends to intimate choices by unmarried as well as married persons”;
thus, according to Fleming, it is “simply unconstitutional” to penalize a
person for making a mistake in fact concerning a minor’s age while exercising
this fundamental right.  Lawrence, 539 U.S. at 578, 123 S. Ct. at
2483.  But the Lawrence Court specifically indicated that its holding
did not extend to cases involving minors, and we easily conclude that Fleming’s
reliance on Lawrence is misplaced.  Id.

We
also conclude that Fleming’s attempts to find refuge for his position in the
Supreme Court’s case of United States v. X–Citement Video is equally
unavailing.  513 U.S. at 72, 115 S. Ct. at 468.  In X–Citement Video,
an undercover police officer ordered pornographic tapes starring an underage
actress from a video company.  Id. at 66–67, 115 S. Ct. at 466. 
The company and its owner were indicted under a federal statute that
criminalized the knowing receipt and transportation of child pornography.  Id. 
The Supreme Court held that the term “knowingly” in the statute modified the
phrase “the use of a minor” and required not only a knowing distribution of the
pornographic material, but also knowledge of the performer’s age.  Id. at
71–83, 115 S. Ct. at 469–74.  The X–Citement Video Court, however,
also recognized that traditionally

the
presumption [of mens rea] expressly excepted “sex offenses, such as
rape, in which the victim’s actual age was determinative despite defendant’s
reasonable belief that the girl had reached age of consent.”  . . . [because]
the perpetrator confronts the underage victim personally and may reasonably be
required to ascertain that victim’s age.  The opportunity for reasonable
mistake as to age increases significantly once the victim is reduced to a
visual depiction, unavailable for questioning by the distributor or receiver.  Id.
at 71–72 n.2, 115 S. Ct. at 469 n.2 (citations omitted).

Thus,
X–Citement Video involves situations in which people usually would not
confront the performer depicted in the material.  Id. at 71–83, 115
S. Ct. at 469–74.  Fleming, however, personally confronted the underage
victim and could have learned her true age.  Therefore, X–Citement Video
is distinguishable from this case and does not suggest that the rights Fleming
claims are fundamental.

Even
if we were to assume Fleming’s argument that statutory rape schemes that do not
require a mens rea or disallow a mistake-of-age defense are
statutory schemes that came into existence after the codification of both state
and federal due process provisions, this position would not undermine section
22.021.  An examination of current statutory rape schemes that recognize the
exception to the requirement of criminal intent and the well-accepted
legislative purpose for omitting scienter undermine Fleming’s argument that
section 22.021 offends principles of justice deeply rooted in our nation’s
history and traditions.  See United States v. Ransom, 942 F.2d 775, 777
(10th Cir. 1991), cert. denied, 502 U.S. 1042 (1992) (recognizing that
the majority rule in the United States is that knowledge of age is not an
essential element of statutory rape and this exclusion does not violate due
process);[5] see also 65 Am. Jur. 2d
Rape § 81 (2011) (“Generally, in the absence of statute, the defendant’s
knowledge of the age of the female is not an essential element of the crime of
statutory rape, and therefore, it is no defense that the accused reasonably
believed that the prosecutrix was of the age of consent.”).

We
acknowledge that there has been movement away from strict liability for
statutory rape in recent years.  See, e.g., People v. Hernandez, 61 Cal. 2d
529, 39 Cal. Rptr. 361, 393 P.2d 673 (1964) (apparently the first case to allow
a mistake-of-age defense; ruling on lenity grounds); see also Perez v. State,
111 N.M. 160, 803 P.2d 249, 250–51 (1990) (“While a child under the age of
thirteen requires the protection of strict liability, the same is not true of
victims thirteen to sixteen years of age.  We recognize the increased maturity
and independence of today’s teenagers and, while we do not hold that knowledge
of the victim’s age is an element of the offense, we do hold that under the
facts of this case the defendant should have been allowed to present his
defense of mistake of fact.”).  A minority of states allow some form of a “mistake
of age” defense by judicial decision or by statute.  See Collins v. State,
691 So. 2d 918, 923 (Miss. 1997); State v. Guest, 583 P.2d 836, 837–39
(Alaska 1978) (due process requires that the defendant be allowed to introduce
evidence regarding mistake as to age); Model Penal Code § 213.6(1)
(Official Draft & Revised Comments 1985).  Under the Model Penal Code, for
example, the defense of mistaken belief should be available when the critical
age is more than ten years of age.  Model Penal Code § 213.6, cmt. 2
at 415.  The theory is that the policies underpinning strict liability seem
less compelling as the age of the minor increases; an accused who mistakenly
but reasonably believes such a partner is above the critical age should have a
defense because he “evidences no abnormality, no willingness to take advantage
of immaturity, no propensity to corruption of minors.”  Id.  Thus,
ironically to Fleming’s arguments, it may be the future, and not the past, that
determines that strict liability in statutory rape cases ultimately offends
concepts of ordered liberty.  But see Kelley v. State, 187 N.W.2d 810,
815 (Wis. 1971) (specifically rejecting model penal code’s mistake-of-age
defense to statutory rape).

It
is worthy of note that many of the cases upholding the constitutionality of
statutory rape involve an adult’s sexual contact with a person younger than
that described in section 22.021.  See, e.g., Wis. Stat. Ann. § 948.02(1)(b)
(“Whoever has sexual intercourse with a person who has not attained the age of
12 years is guilty of a Class B felony”).  But the majority rule in the
United States is that the defendant’s knowledge of the victim’s age is not an
essential element of statutory rape and that this exclusion does not violate
due process.  See Ransom, 942 F.2d at 776–77; State v. Granier,
765 So. 2d 998, 1001 (La. 2000); Owens v. State, 724 A.2d 43, 48–49
(Md.), cert. denied, 527 U.S. 1012 (1999); State v. Yanez, 716
A.2d 759, 767 (R.I. 1998); State v. Stokely, 842 S.W.2d 77, 80–81 (Mo.
1992); State v. Campbell, 473 N.W.2d 420, 425 (Neb. 1991); People v.
Cash, 351 N.W.2d 822, 828 (Mich. 1984); Commonwealth v. Miller, 432
N.E.2d 463, 466 (Mass. 1982); State v. Tague, 310 N.W.2d 209, 212 (Iowa
1981); Goodrow v. Perrin, 403 A.2d 864, 866–68 (N.H. 1979); State v.
Martinez, 14 P.3d 114, 116–117 (Utah App. 2000).

Although
the court of criminal appeals has never considered whether section 22.021
violates due process, the court of criminal appeals has determined that the
lack of a mens rea component in section 22.021’s statutory
predecessor did not violate equal protection of the law.  Ex parte
Groves, 571 S.W.2d 888, 890 (Tex. Crim. App. 1978).  Our sister court in
Houston, however, addressed the very issue before us and held that section
22.021’s predecessor did not violate due process.  Scott v. State, 36
S.W.3d 240, 242 (Tex. App.—Houston [1st Dist.] 2001, pet. ref’d).  With these
decisions and the backdrop of the majority rule in this nation regarding
statutory rape in mind, we conclude that there is no fundamental right that a
State is required to include a mens rea component or a
mistake-of-age defense in a statutory rape statute.  Thus, section 22.021 needs
only to serve a legitimate state purpose to be constitutional against the
backdrop of substantive due process.  Flores, 507 U.S. at 306, 113 S. Ct.
at 1449.  We conclude that it does.

Strict
liability regarding the age of the minor furthers the legitimate government
interest in protecting children from sexual abuse by placing the risk of
mistake on the adult actor.  See Ransom, 942 F.2d at 777; see also
Byrne v. State, 358 S.W.3d 745, 750 (Tex. App.—San Antonio 2011, no pet.)
(“Strict liability sex crimes are a valid exercise of the state’s authority and
rationally support a legitimate state interest.”).

Although
sound reasons might be advanced on either side of the argument of whether a mens rea
component should exist or whether a mistake-of-age defense should exist in
section 22.021, determining the line that separates what is criminal from what
is not lies peculiarly within the sphere of legislative discretion—especially,
as here, where no fundamental right is at question.  See Lambert, 355
U.S. at 228, 78 S. Ct. at 242.  We have no authority to substitute our
judgment for that of the legislature unless we find the classification to be
arbitrary, capricious, and without reasonable relationship to the purposes of
the statute.  See Ransom, 942 F.2d at 777.  We conclude that section
22.021 is neither arbitrary nor capricious and that it furthers the legitimate
government interest of protecting children.  See Flores, 507 U.S. at 305–06,
113 S. Ct. at 1448–49 (reasoning that states have a legitimate purpose
concerning welfare of minors); Scott, 36 S.W.3d at 242 (holding that
Texas’s statutory rape statute does not violate due process and furthers
legitimate interest in protecting the health and safety of children).  Thus, section
22.021’s omission of a mens rea component or its lack of a
mistake-in-fact defense does not offend notions of Due Process or due course of
law.  We overrule each of Fleming’s four points.

III.  Conclusion

Having
overruled all of Fleming’s points on appeal, we affirm the trial court’s
judgment.

 

BILL MEIER
JUSTICE

 

PANEL:  GARDNER and MEIER, JJ.; and WILLIAM
BRIGHAM (Senior Justice, Retired, Sitting by Assignment).

 

PUBLISH

 

DELIVERED:  August 2, 2012









[1]See Tex. Penal Code
Ann. § 22.021(a)(1)(B)(iii), (2)(B) (West Supp. 2012).





[2]See U.S. Const.
amends. V, XIV, § 1; Tex. Const. art. I, § 19.





[3]After the court of
criminal appeals vacated our original judgment, we asked for further briefing
by the parties and again heard oral arguments.  In coming to our analysis in
this opinion, we have considered the parties’ original briefs on the merits,
the court of criminal appeals’ instructions to us on remand, and the additional
briefing on remand and oral arguments by the parties to this case.  For the
purposes of clarity, we are also addressing all four of Fleming’s original
points on appeal, not just his two points pertaining to his due course of law
argument.





[4]The judgment reads that
the “age of the victim at the time of the offense was 13.”





[5]In his supplemental
briefing on remand, Fleming contends that this court’s previous opinion
erroneously relied on Ransom in initially rejecting his contentions. 
This court correctly cited Ransom in its original opinion and does again
in this opinion.  See Ransom, 942 F.2d at 776–77.  In fact, the
proposition of law cited by this court that Fleming complains of is almost
verbatim from Ransom.  Id.