

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| JAMES HENRY GELINAS, | § | No. 08-09-00246-CR |
| Appellant, | § | Appeal from |
| v. | § | County Court at Law No. 1 |
| THE STATE OF TEXAS, | § | of El Paso County, Texas |
| Appellee. | § | (TC # 20070C04062) |
| | § | |

**O P I N I O N**

James Henry Gelinas appeals his conviction of driving while intoxicated. A jury found Appellant guilty and the trial court assessed his punishment at a $1,000 fine and 180 days in jail, probated for fifteen months. On June 15, 2011, we issued an opinion reversing the trial court's judgment based on a finding of charge error. *Gelinas v. State*, No. 08-09-00246-CR, 2011 WL 2420858 (Tex.App.--El Paso June 15, 2011). Finding that the charge error did not result in egregious harm, the Court of Criminal Appeals reversed our judgment and remanded with instructions to address Appellant's remaining points of error. *Gelinas v. State*, 398 S.W.3d 703 (Tex.Crim.App. 2013). We affirm.

**FACTUAL SUMMARY**

DPS Trooper Diego Marquez was on routine patrol in El Paso County at around midnight when he observed a Bronco/Blazer-type vehicle make a right turn onto FM 1281 from a parking-

lot driveway. Marquez believed that a traffic violation had occurred because the driver, later identified as Appellant, did not use a turn signal. At trial, he admitted that his conclusion was erroneous because it was no longer a violation for a driver to fail to use a signal when turning out of a private driveway onto a street. Marquez drove past the vehicle and saw in his rear view mirror that the license plate light was not white. He described the light as being red and did not recall stating during an earlier administrative hearing that the light was "amber-colored." Marquez turned his patrol unit around and initiated a traffic stop. He walked up to the driver's side window and told Appellant why he had stopped him. Appellant's eyes were bloodshot, his speech was slurred, and he had an odor of alcoholic beverages on his breath. Marquez also noted that Appellant's reactions were slow when he asked Appellant to produce his driver's license and insurance. Appellant told Marquez he had been at a bar and had "at least four" beers. Later during the encounter, Appellant admitted he had drunk six beers.

At Marquez's request, Appellant performed three standardized field sobriety tests (SFSTs): the horizontal gaze nystagmus test (HGN), the walk and turn, and the one-leg stand. On the HGN test, Appellant displayed six out of six possible clues. He displayed three out of eight possible clues on the walk-and-turn test and three out of four clues on the one-leg stand test. The trial court admitted into evidence a video recording (State's Exhibit 1) which began when Marquez pulled over Appellant's vehicle and concluded when he placed him under arrest for DWI. The video shows Appellant performing the SFSTs. It also shows that Appellant's wife, Mariko Gelinas, arrived at the scene. At one point, Marquez overheard Ms. Gelinas tell Appellant to not perform the breath test. Marquez told Ms. Gelinas to stop telling Appellant what to do or he would arrest her for obstruction of justice.

Based on his observations of Appellant at the scene, the presence of the clues from the SFSTs indicating Appellant's physical and mental faculties were impaired, and Appellant's admission that he had been drinking beer, Marquez concluded that Appellant was intoxicated. Marquez placed Appellant under arrest and read him the statutory warnings. Appellant did not respond when Marquez asked him whether he would provide a breath specimen for testing so Marquez indicated on the DIC-24 form that Appellant had refused to sign the form or provide a breath specimen.

Mariko Gelinas testified that she was on the phone with Appellant when he was stopped and she went to the scene to provide insurance papers for the vehicle. She told Appellant not to worry and she would get him an attorney. She denied telling him not to do the breath test. Several photographs taken by Ms. Gelinas, including a photo of the vehicle's license plate, were admitted into evidence. She testified on direct examination that the license plate light appeared white. When shown a photo of the vehicle's license plate on cross-examination, Ms. Gelinas testified that the light looked more orange than red.

Appellant testified on his own behalf. He was a truck driver at the time of his arrest for DWI and had a commercial driver's license. Appellant was talking to his wife on the telephone when Trooper Marquez pulled him over. Appellant explained that it took him several seconds to locate his insurance papers because the handle for the glove box was broken and it was dark inside of the vehicle. Appellant's wife arrived at the scene and she gave Marquez the insurance papers. Appellant admitted telling Marquez that he had drunk "at least four" beers, but Marquez did not ask him over what time period he had drunk those beers. Appellant testified that he drank the beers between 7 p.m. and 11 p.m. that evening and he had eaten at about 8 o'clock. When the trooper asked him if he had at least a six-pack, Appellant simply agreed with him "to

get this over with." He explained that his eyes were bloodshot because smoking was permitted at the bar and there had been a lot of smoke in the air. Appellant also testified that Marquez did not read the statutory warning to him, so he simply shrugged and did not reply when the officer asked him to provide a breath specimen. If he had known his license would be suspended, he would have consented.

## ADMISSION OF STATE'S EXHIBIT 1

Issues One and Three relate to the admission of State's Exhibit 1. In Issue One, Appellant contends that the trial court abused its discretion by admitting into evidence State's Exhibit 1 because Marquez's alteration of the recording rendered it inaccurate, unreliable, and impaired his ability to present his defensive theories that his traffic stop was illegal and Marquez did not read the DIC-24 to Appellant. Appellant argues in Issue Three that admission of State's Exhibit 1 violates the "best evidence rule."

### Preservation of Error

The State contends that Appellant's contentions raised in Issue One are waived because he did not make these objections at trial. The Rules of Appellate Procedure require a party to preserve error by making a timely and specific objection. TEX.R.APP.P. 33.1(a); *Wilson v. State*, 71 S.W.3d 346, 349 (Tex.Crim.App. 2002); *Peralta v. State*, 338 S.W.3d 598, 609 (Tex.App.--El Paso 2010, no pet.). To preserve error related to the admission of evidence, the complaining party must object and secure an adverse ruling in a hearing held outside of the jury's presence or when the evidence is offered at trial. *See* TEX.R.APP.P. 33.1; TEX.R.EVID. 103(a)(1).[1] An

---

[1] Unless otherwise noted, this opinion cites to the amended Texas Rules of Evidence which became effective on April 1, 2015. *See* Final Approval of Amendments to the Texas Rules of Evidence, Misc. Docket 15-9048 (Tex. March 10, 2015); Final Approval of Amendments to the Texas Rules of Evidence, Misc. Docket 15-001 (Tex.Crim.App. March 12, 2015). With the exception of the amendments to Rules 511 and 613, the amendments are intended to be stylistic only. *Id.* This case does not concern Rules 511 or 613. Consequently, we cite case authority applying the former Rules of Evidence.

objection stating one legal theory may not be used to support a different legal theory on appeal. *Dixon v. State*, 2 S.W.3d 263, 273 (Tex.Crim.App. 1999)(op. on reh'g). When a party obtains a ruling from the trial court on his objections to evidence in a hearing outside the presence of the jury, he is not required to repeat those objections when the evidence is offered before the jury. *See* TEX.R.EVID. 103(b); *Geuder v. State*, 115 S.W.3d 11, 15 (Tex.Crim.App. 2003).

At the suppression hearing, the State offered into evidence two video recordings as State's Exhibit 1.[2] Appellant objected to the video recordings "under the Best Evidence Rule" because they are copies, not the original recording. Marquez testified that he made the first DVD from the original recording shortly after the arrest and submitted it to the District Attorney's Office. He made the second DVD at the request of the D.A.'s Office. Marquez specifically testified that he had reviewed the recordings and they fairly and accurately depicted the events shown that night. The trial court expressly overruled Appellant's objection that State's Exhibit 1 is not the original recording.

At trial, Marquez identified State's Exhibit 1 as a copy of the traffic stop and he testified, as he had in the suppressing hearing, that he had reviewed the recording, it fairly and accurately depicted the traffic stop, and it had not been altered since he created the DVD from the original recording. On *voir dire* examination, Marquez explained that State's Exhibit 1 is not the original tape that was in the recording unit in his vehicle and the original recording is kept by DPS. The original tape contains the recordings of all of the traffic stops Marquez made that evening both before and after the stop of Appellant. State's Exhibit 1 contains only the recording of Appellant's traffic stop and it shows all of the events which occurred from the moment Marquez turned on the patrol unit's emergency lights until he placed Appellant under arrest and

---

[2] Both recordings were admitted into evidence at the pre-trial suppression hearing. The State obtained the records from the court reporter during trial and they were admitted as State's Exhibit 1 and 1A.

administered the *Miranda*[3] warnings. Marquez explained that the original tape is retained by DPS and is "deleted" after a certain time period. When asked whether the original tape has been destroyed, Marquez replied that he thought it had been but was not sure. Appellant made the following objection:

> Your Honor, again, I would object if they've edited out when Ms. Gelinas gets threatened with the arrest and what happened prior to the stop. This should have been on the tape and what happened afterwards. It's not an accurate tape and I think my client would be severally [sic] damaged by letting in an incomplete tape of the events of that night, especially when there was no legal justification to destroy the evidence that was taken. I'm actually kind of shocked that that's their practice.

The trial court overruled Appellant's objections.

Later during the trial, Marquez testified that the original videotape depicted him reading the DWI statutory warning to Appellant, but State's Exhibit 1 does not include that portion of original videotape because it was DPS's standard practice to only include the "traffic stop" on the video submitted with the report. In a hearing outside of the jury's presence, Appellant objected that State's Exhibit 1 is incomplete and the failure to record the reading of the DWI statutory warning to Appellant on State's Exhibit 1 constituted a *Brady*[4] violation. Appellant moved to strike State's Exhibit 1 and Marquez's testimony related to the video and he also moved for a mistrial. The trial court overruled the objections and denied the motions to strike and for a mistrial. Appellant did not object to State's Exhibit 1 on the ground it was unreliable nor did he assert that it impaired his ability to present any defensive theories. Consequently, these arguments are waived. We will restrict our review to Appellant's complaints that State's Exhibit 1 violates the "best evidence rule" and it is inaccurate.

---

[3] *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

[4] *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

*Standard of Review*

A trial court has broad discretion in determining the admissibility of evidence. *Allridge v. State*, 850 S.W.2d 471, 492 (Tex.Crim.App. 1991). Consequently, an appellate court reviews a trial court's decision admitting or excluding evidence for an abuse of discretion. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex.Crim.App. 2010); *Saavedra v. State*, 297 S.W.3d 342, 349 (Tex.Crim.App. 2009). The trial court's ruling will be overturned only if it is so clearly wrong that the ruling lies outside the zone of reasonable disagreement. *Martinez*, 327 S.W.3d at 736; *Taylor v. State*, 268 S.W.3d 571, 579 (Tex.Crim.App. 2008).

*Authentication*

Appellant's argument that State's Exhibit 1 is inadmissible because it is inaccurate is a challenge to the authentication of this exhibit. Under Rule 104(a), the trial court must decide any preliminary question about whether evidence is admissible. TEX.R.EVID. 104(a). Irrelevant evidence is not admissible. TEX.R.EVID. 402. Evidence is irrelevant if it is not authentically what its proponent claims it to be. *Tienda v. State*, 358 S.W.3d 633, 638 (Tex.Crim.App. 2012). To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is. TEX.R.EVID. 901(a).[5] Authentication can be accomplished by testimony from a witness with knowledge that an item is what it is claimed to be. TEX.R.EVID. 901(b)(1). The preliminary question for the trial court to decide is simply whether the proponent of the evidence has supplied facts that are sufficient to support a reasonable jury determination that the evidence he has proffered is authentic. *Tienda*, 358 S.W.3d at 638; *Druery v. State*, 225 S.W.3d 491, 502 (Tex.Crim.App. 2007). Marquez testified at the suppression hearing and trial that State's

---

[5] The prior version of Rule 901(a) stated: "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."

Exhibit 1 fairly and accurately depicted all of the events which occurred from the time he stopped Appellant to when he placed him under arrest, and it had not been altered since he created the videotape from the original recording. This evidence supports the trial court's implied finding that the video recording is what it is claimed to be. No abuse of discretion is shown.

*Admission of a Duplicate Recording*

Appellant asserts in Issue Three that State's Exhibit 1 is inadmissible because it violates "the best evidence rule." This argument implicates Article X of the Rules of Evidence which addresses what was the "best evidence rule" under the common law. *Englund v. State*, 946 S.W.2d 64, 67 (Tex.Crim.App. 1997). Rule 1002 provides that an original writing, recording, or photograph is required in order to prove its content unless the Rules of Evidence or other law provides otherwise. TEX.R.EVID. 1002. "A duplicate is admissible to the same extent as the original unless a question is raised about the *original's authenticity* or the circumstances make it unfair to admit the duplicate." [Emphasis added]. TEX.R.EVID. 1003. While Appellant certainly challenged the authenticity of the duplicate recording, he did not raise any issue regarding the authenticity of the original recording. Appellant's essential complaint about State's Exhibit 1 is that it does not show what occurred immediately before Marquez stopped Appellant's vehicle and it does not show Marquez reading the DWI statutory warning to Appellant after he was placed under arrest. It is undisputed that State's Exhibit 1 is an accurate recording of the events it purports to depict and there is no evidence from which it can be concluded it was unfair under the circumstances to admit the duplicate recording. Appellant cross-examined Marquez extensively about what is not shown on State's Exhibit 1 and he vigorously challenged

Marquez's credibility. Having found no abuse of discretion in the admission of State's Exhibit 1, we overrule Issues One and Three.

## ADMISSION OF STATE'S EXHIBIT 1A

In Issue Two, Appellant argues that the trial court abused its discretion by admitting State's Exhibit 1A because it was not properly authenticated. Additionally, he asserts that the trial court erred by giving the jury, at the State's request, an instruction regarding State's Exhibit 1A. In Issue Twelve, Appellant also challenges the instruction given by the trial court.

Trooper Marquez made two copies of the traffic stop recording and they were admitted as State's Exhibit 1 during the suppression hearing. Both of the tapes are marked with Appellant's name, date of birth, and date of arrest, and both were marked as State's Exhibit 1. The only difference between the recordings is that the one admitted into evidence at trial is longer because it depicts more footage of the arrest. During trial, the prosecutor retrieved both recordings from the court reporter and the longer recording was admitted as State's Exhibit 1. The prosecutor utilized State's Exhibit 1 during his direct examination of Trooper Marquez. The court recessed for the day at the conclusion of the State's direct examination and the court reporter asked the prosecutor for the exhibits which had been admitted that day. The prosecutor mistakenly gave the court reporter the shorter recording which had not been admitted into evidence at trial and the court reporter marked the exhibit with the additional notation "6-2" indicating the date on which it was admitted into evidence.[6] The following day, Appellant's attorney obtained the shorter recording marked "6-2" from the court reporter and he used it during cross-examination before discovering that he had been given the wrong version of State's Exhibit 1. The trial court denied Appellant's motion for a mistrial, but discussed with the parties how they wished to proceed. Appellant suggested that he would continue his cross-examination with the longer recording and

---

[6] The exhibit was admitted into evidence on the portion of trial occurring on June 2, 2009.

he objected to admitting the shorter version because the admission of two versions of the same recording might confuse the jury. The State responded that the jury had already seen portions of the shorter version during Appellant's cross-examination of Marquez, so the shorter version should be admitted as State's Exhibit 1A. The trial court overruled Appellant's objection and admitted State's Exhibit 1A. Contrary to Appellant's assertion on appeal that the State requested the instruction, the record reflects that Appellant expressly asked that the jury be given an explanation about what happened because he did not want the jury to think that he had anything to do with the mistake because it could cause the jury to draw an unfair inference with respect to Appellant. The trial court agreed and carefully explained to the jury what had happened and stated that no one, including Appellant's counsel, was to blame. The court further informed the jury that both recordings had been admitted into evidence and the only difference between the recordings is that one was a longer version. The court also instructed the jury that they must give "full faith and credit" to Appellant's cross-examination of the witness based on State's Exhibit 1A because the exhibit had been admitted into evidence. The State argues that Appellant did not preserve the issues raised on appeal.

*Preservation of Error*

Appellant first asserts that the trial court erred by admitting State's Exhibit 1A because it was not authenticated. Appellant objected to State's Exhibit 1A during the pre-trial hearing on the ground that its admission violated the "best evidence rule." As noted in our discussion of Issues One and Three, such a complaint implicates Article X of the Texas Rules of Evidence. Authentication of evidence is addressed in Article IX. The only objection Appellant made at trial with respect to the admission of State's Exhibit 1A is that it would confuse the jury. The "best evidence rule" and jury confusion objections do not comport with the authentication

complaint raised on appeal. Consequently, the authentication issue is waived. *See* TEX.R.APP.P. 33.1(a); *Dixon*, 2 S.W.3d at 273 (an objection stating one legal theory may not be used to support a different legal theory on appeal).

Appellant also contends that the trial court's instruction informed the jury that his attorney improperly used State's Exhibit 1A when it had not been admitted into evidence and he was responsible for use of the wrong videotape. The trial court gave the curative instruction at Appellant's request and Appellant did not object to any aspect of the instruction when it was being given to the jury. Ordinarily, a party must object to a trial judge's improper comments during trial to preserve the complaint for appellate review. *See* TEX.R.APP.P. 33.1; *Unkart v. State*, 400 S.W.3d 94, 99 (Tex.Crim.App. 2013). By failing to object to the instruction when given, Appellant failed to preserve his arguments. Issues Two and Twelve are overruled.

## MOTION TO SUPPRESS

In Issues Four, Five, and Six, Appellant argues that the trial court abused its discretion by denying his motion to suppress all evidence obtained as a result of the illegal traffic stop in violation of the Fourth Amendment and Article 38.23 of the Texas Code of Criminal Procedure. Appellant contends that Trooper Marquez did not have reasonable suspicion or probable cause to believe he had violated Section 547.322(f) of the Transportation Code.

### *Preservation of Error*

The State asserts that the suppression issues are waived because Appellant did not obtain an adverse ruling on his motion to suppress. An issue is not preserved for appellate review unless the record shows that the trial court ruled on the request, objection, or motion either explicitly or implicitly, or refused to rule and the complaining party objected to the refusal. *See* TEX.R.APP.P. 33.1(a)(2)(A)(B). At the conclusion of the hearing on the motion to suppress, the

trial judge stated that he would take the matter "under advisement." Appellant cross-examined Trooper Marquez with respect to the violation of Section 547.322(f) and he introduced defensive evidence related to the color of the license plate light, but he did not object or obtain a running objection based on his contention that he was unlawfully detained. Consequently, in order to preserve error, Appellant was required to obtain a ruling on his motion to suppress.

At oral argument, the parties addressed whether Appellant had preserved error related to his motion to suppress. Appellant subsequently filed a motion in the trial court asking the court to substitute a "new order" denying the motion to suppress because the original order had been lost. The trial court granted the motion and signed an order on March 21, 2011 denying the motion to suppress.[7] Appellant filed a motion in this court asking that we order the County Clerk to supplement the record with the substitute order denying the motion to suppress. In the meantime, the State filed a motion to reconsider in the trial court asserting there was no evidence that the trial court had previously ruled on the motion to suppress. The trial court denied the State's motion to reconsider. We denied the motion to supplement as moot on June 15, 2011 because we issued an opinion that same day reversing the trial court's judgment on an issue unrelated to the motion to suppress ruling. *See Gelinas*, No. 08-09-00246-CR, 2011 WL 2420858 at *5. The issue whether the record should be supplemented with the March 21, 2011 order denying the motion to suppress is now squarely before us.

Rule 34.5(e) sets forth the procedure to be utilized when a filing designated for inclusion of the clerk's record has been lost or destroyed:

> If a filing designated for inclusion in the clerk's record has been lost or destroyed, the parties may, by written stipulation, deliver a copy of that item to the trial court clerk for inclusion in the clerk's record or a supplement. If the parties cannot agree, the trial court must--on any party's motion or at the appellate court's

---

[7] It appears that the trial court conducted a hearing on the motion but a transcription of the hearing has not been made part of the appellate record.

request--determine what constitutes an accurate copy of the missing item and order it to be concluded in the clerk's record or a supplement.

Tex.R.App.P. 34.5(e).

The trial judge found that, prior to trial on the merits, he signed a written order denying the motion to suppress and that order has been lost. In the same order, the trial court denied the motion to suppress with the stated intent that it serve as a substitute for the original order. Given the trial court's express finding that he signed an order denying the motion to suppress prior to trial on the merits, we conclude that the trial court impliedly found that the substitute order is an accurate copy of the missing item. As such, it must be made part of the appellate record.

*Standard of Review and Relevant Law*

At a suppression hearing, the trial judge is the sole and exclusive trier of fact and may choose to believe or disbelieve any or all of the evidence presented before it. *Tillman v. State*, 354 S.W.3d 425, 435 (Tex.Crim.App. 2011); *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex.Crim.App. 2002). We review a ruling on a motion to suppress using a bifurcated standard of review. *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex.Crim.App. 2010); *Guzman v. State*, 955 S.W.2d 85, 87-91 (Tex.Crim.App. 1997). Under this standard, the trial court's findings of historical fact must be afforded almost total deference provided they are supported by the record. *Valtierra*, 310 S.W.3d at 447; *Amador v. State*, 221 S.W.3d 666, 673 (Tex.Crim.App. 2007). We also defer to the court's determination of mixed questions of law and fact that turn on an assessment of a witness's credibility or demeanor. *Valtierra*, 310 S.W.3d at 447; *Amador*, 221 S.W.3d at 673. We will review *de novo* the trial court's determination of legal questions and its application of the law to facts that do not turn upon a determination of witness credibility and demeanor. *See Valtierra*, 310 S.W.3d at 447; *Amador*, 221 S.W.3d at 673.

Appellant was stopped without a warrant and without his consent. Consequently, the State had the burden of proving the reasonableness of the stop. *See Castro v. State*, 227 S.W.3d 737, 741 (Tex.Crim.App. 2007); *Young v. State*, 133 S.W.3d 839, 841 (Tex.App.--El Paso 2004, no pet.). Trooper Marquez stopped Appellant because the rear license plate was not illuminated by a white light in violation of Section 547.322(f) of the Texas Transportation Code. A law enforcement officer may lawfully stop a motorist who commits a traffic violation in the officer's presence. *See Garcia v. State*, 827 S.W.2d 937, 944 (Tex.Crim.App. 1992); TEX.CODE CRIM.PROC.ANN. art. 14.01(b)(West 2015)("A peace officer may arrest an offender without a warrant for any offense committed in his presence or within his view."); TEX.TRANSP.CODE ANN. § 543.001 (West 2011)("Any peace officer may arrest without warrant a person found committing a violation of this subtitle."). The decision to stop an automobile is reasonable when an officer has probable cause to believe that a traffic violation has occurred. *Whren v. United States*, 517 U.S. 806, 810, 116 S.Ct. 1769, 1772, 135 L.Ed.2d 89 (1996); *Walter v. State*, 28 S.W.3d 538, 542 (Tex.Crim.App. 2000). The State is not required to show that a traffic offense was actually committed, but only that the officer reasonably believed a violation had occurred. *Texas Department of Public Safety v. Fisher*, 56 S.W.3d 159, 163 (Tex.App.--Dallas 2001, no pet.); *accord Garcia v. State*, 43 S.W.3d 527, 530 (Tex.Crim.App. 2001); *see also Cook v. State*, 63 S.W.3d 924, 929 n.5 (Tex.App.--Houston [14th Dist.] 2002, pet. ref'd)(noting that there is no requirement that a traffic regulation is actually violated).

*Violation of Section 547.322(f)*

Section 547.322(f) of the Texas Transportation Code requires "[a] taillamp or a separate lamp" to be "constructed and mounted to emit a white light that: (1) illuminates the rear license plate; and (2) makes the plate clearly legible at a distance of 50 feet from the rear."

TEX.TRANSP.CODE ANN. § 547.322(f). When reviewing a trial court's ruling on a motion to suppress, we generally consider only evidence adduced at the suppression hearing. *Gutierrez v. State*, 221 S.W.3d 680, 687 (Tex.Crim.App. 2007). In this case, however, the parties relitigated the suppression issue at trial. Consequently, we must also consider the trial evidence. *Id.* There is evidence showing that the light emitted by the license plate lamp did not emit a white light. Trooper Marquez testified at the suppression hearing and at trial that the light was red, while Appellant's wife testified that the light appeared more orange than red. Marquez also stated that the light was not white. The initial stop of the vehicle was reasonable because the evidence established that Marquez had probable cause to believe that Appellant was operating the vehicle in violation of Section 547.322(f) of the Transportation Code. The trial court did not err by denying Appellant's motion to suppress. Issues Four, Five, and Six are overruled.

## STANDARIZED FIELD SOBRIETY TESTS

In Issue Seven, Appellant asserts that the trial court erred by not suppressing all evidence obtained after Trooper Marquez administered the SFSTs because the State failed to prove at the suppression hearing that he was qualified to administer these tests. He concedes that the State presented evidence at trial that Marquez was certified to administer the SFSTs. Even if we assume for the sake of argument that the State failed to establish at the suppression hearing that Marquez is properly certified to administer the SFSTs, the evidence is not subject to suppression because the State established at trial, as conceded by Appellant, that Marquez is certified. A ruling on a motion to suppress, like other interlocutory rulings, is not written in stone and the trial court has discretion to reconsider that ruling. *Black v. State*, 362 S.W.3d 626, 633 (Tex.Crim.App. 2012); *State v. Henry,* 25 S.W.3d 260, 262 (Tex.App.--San Antonio 2000, no pet.); *see Montalvo v. State,* 846 S.W.2d 133, 137-38 (Tex.App.--Austin 1993, no pet.)(holding

that a motion to suppress is "nothing more than a specialized objection" and a trial court is "free to reconsider its own earlier suppression ruling"). Further, we do not review the trial court's suppression ruling in isolation because the parties relitigated the issue of Marquez's certification during trial. Consequently, we are required to also consider the trial evidence. *See Gutierrez*, 221 S.W.3d at 687. The trial court did not abuse its discretion by admitting Marquez's testimony at trial regarding the SFSTs. Issue Seven is overruled.

## DESTRUCTION OF EXCULPATORY EVIDENCE

In Issues Eight, Nine, and Ten, Appellant alleges that his right to due process was violated because the State failed to preserve or destroyed exculpatory evidence. The Due Process Clause of the Fourteenth Amendment guarantees that a defendant in a criminal prosecution is afforded a trial comporting with fundamental fairness. *See California v. Trombetta,* 467 U.S. 479, 485, 104 S.Ct. 2528, 2532, 81 L.Ed.2d 413 (1984). In cases addressing the prosecution's failure to preserve evidence in a criminal trial, the United States Supreme Court has drawn a distinction between "material exculpatory evidence" and "potentially useful evidence." *Gutierrez v. State*, 419 S.W.3d 547, 552 (Tex.App.--San Antonio 2013), *citing Arizona v. Youngblood,* 488 U.S. 51, 57-58, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988); *Salazar v. State,* 298 S.W.3d 273, 277-78 (Tex.App.--Fort Worth 2009, pet. ref'd); *see Ex parte Napper,* 322 S.W.3d 202, 229 (Tex.Crim.App. 2010). A federal due process violation occurs whenever the State fails to preserve or destroys material exculpatory evidence, regardless of whether the State acted in bad faith. *Salazar*, 298 S.W.3d at 278. The duty to preserve evidence is limited to evidence that might be expected to play a significant role in the suspect's defense. *Trombetta,* 467 U.S. at 488, 104 S.Ct. at 2534. This standard of constitutional materiality is met only where the missing evidence possesses an exculpatory value that was

apparent before the evidence was destroyed, and is of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means. *Trombetta,* 467 U.S. at 489, 104 S.Ct. at 2534. It is not enough to show that the missing or destroyed evidence might have been favorable for the defendant; in order to meet the materiality standard, its exculpatory value must be apparent. *See Lee v. State*, 893 S.W.2d 80, 87 (Tex.App.--El Paso 1994, no pet.). If the defendant's claim is based on the destruction of potentially useful evidence, a due process violation does not occur unless the defendant shows that the State acted in bad faith in destroying the evidence. *Salazar*, 298 S.W.3d at 278, *citing Fisher,* 540 U.S. at 547-48, 124 S.Ct. at 1202; *Youngblood,* 488 U.S. at 57-58, 109 S.Ct. at 337).

*DWI Statutory Warning*

In Issue Eight, Appellant maintains that his right to Due Process under the Fourteenth Amendment was violated because Trooper Marquez did not record on State's Exhibit 1 a portion of the original videotape which would have shown that he did not read the DWI statutory warning to Appellant. It is undisputed that the video recordings admitted at trial do not depict Marquez reading the DWI statutory warning to Appellant. Marquez testified that the original videotape showed him reading the DWI statutory warning to Appellant, but he did not include that portion of the original videotape on State's Exhibit 1 because it was DPS's standard practice to only include the traffic stop on the video submitted with the arrest report. Appellant took the position in the trial court that the original videotape had been destroyed, but Marquez testified at trial that he was not sure it had been deleted. Appellant did not subpoena the custodian of the DPS records or otherwise attempt to affirmatively establish that the original videotape had in fact been destroyed. Consequently, he has failed to show that he could not obtain comparable evidence by other reasonably available means. *See Trombetta,* 467 U.S. at 489, 104 S.Ct. at

2534. For this reason alone, Appellant's due process claim fails. Issue Eight is overruled.

*Video of the Traffic Stop*

In Issue Nine, Appellant contends that his right to Due Process under the Fourteenth Amendment was violated because Trooper Marquez did not record on State's Exhibit 1 the portion of the original videotape "showing how the traffic stop of Gelinas's vehicle was made . . . ." The recording unit in the vehicle was turned on when Marquez turned on his patrol unit's emergency lights and shows him stopping Appellant's vehicle. There is no evidence in the record that the original videotape contained anything related to this traffic stop before Marquez turned on the patrol unit's emergency lights. Appellant has failed to show that the State destroyed any evidence "showing how the traffic stop of Gelinas's vehicle was made." Issue Nine is overruled.

*Destruction of Potentially Useful Evidence*

In Issue Ten, Appellant alternatively argues that his right to Due Process was violated because Trooper Marquez acted in bad faith by failing to preserve potentially useful video evidence. Where lost or destroyed evidence is merely "potentially useful," due process is not violated "unless a criminal defendant can show bad faith on the part of the police." *Arizona v. Youngblood,* 488 U.S. 51, 58, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988); *see also Illinois v. Fisher,* 540 U.S. 544, 547-48, 124 S.Ct. 1200, 157 L.Ed.2d 1060 (2004). Bad faith entails some sort of improper motive, such as personal animus against the defendant or a desire to prevent the defendant from obtaining evidence that might be useful. *Ex parte Napper*, 322 S.W.3d at 238. There is no evidence in the record before us that Marquez failed to preserve or destroyed the video evidence in bad faith. Marquez testified that he recorded only the portion of the video related to the traffic stop and arrest in accordance with DPS' standard practice. Further, there is

evidence that DPS maintains the original videotape for only a limited period of time. There is no

due process violation where evidence is destroyed in good faith and in accord with the normal

practice of the law enforcement agency. *Trombetta*, 467 U.S. at 488, 104 S.Ct. at 2533; *see*

*Mahaffey v. State*, 937 S.W.2d 51, 53 (Tex.App.--Houston [1st Dist.] 1996, no pet.)(holding that

erasure of videotape of sobriety tests did not violate Due Process Clause or Due Course of Law

Clause because there was no evidence of bad faith). Issue Ten is overruled.

**SPOLIATION INSTRUCTION**

In Issue Eleven, Appellant argues that the trial court erred by refusing to include a

spoliation instruction in the charge. The requested instruction stated:

> During the trial of this case, the issue has arisen whether or not the State was in
> possession of a videotape taken of the defendant either before, during, and after
> the detention and arrest; and having said possession, either destroyed or allowed
> the videotape or a portion thereof to be destroyed.

> Our law provides that under the Due Course of Law provision of Article I, section
> 19 of the Texas Constitution, the State has a duty to preserve material evidence
> which has apparent exculpatory evidence value, encompassing both exculpatory
> evidence and evidence that is potentially useful to the defense. When the State
> intentionally destroys such evidence and when that fact is established, you the
> jury are instructed that you may draw the inference that the evidence destroyed
> was unfavorable to the State and would have been favorable to the defendant.

The trial court denied Appellant's request to include this instruction in the charge. Article 36.14

requires the trial judge to deliver to the jury "a written charge distinctly setting forth the law

applicable to the case." TEX.CODE CRIM.PROC.ANN. art. 36.14 (West 2007); *Delgado v. State*,

235 S.W.3d 244, 247 (Tex.Crim.App. 2007).

Appellant relies exclusively on *Pena v. State*, 226 S.W.3d 634, 651 (Tex.App.--Waco

2007)(*Pena III*), *rev'd on other grounds*, 285 S.W.3d 459 (Tex.Crim.App. 2009), to argue that he

is entitled to the requested spoliation instruction. In *Pena III*, the Waco Court of Appeals held

that the Due Course of Law provision of the Texas Constitution provides greater protection than

the federal Due Process Clause and it imposes a duty on the State to preserve both material, exculpatory evidence and potentially useful evidence. *Pena*, 226 S.W.3d at 651-53 (*Pena III*). The court of appeals adopted the legal standard utilized by the Delaware Supreme Court when addressing alleged violations of the Delaware Constitution's due process provision. *See id*. at 650-653. *Pena III* concluded that the remedy for the loss or destruction of evidence is an adverse inference instruction and the opinion set forth two sample instructions. *Pena*, 226 S.W.3d at 655-56. The Court of Criminal Appeals reversed because Pena had not preserved his claim based upon the due course of law provision. *Pena*, 285 S.W.3d at 464.

The majority of Texas intermediate appellate courts have held that the Due Course of Law provision does not provide more protection than the Due Process Clause as it applies to the State's loss or destruction of evidence in a criminal prosecution. *See e.g.*, *Higginbotham v. State*, 416 S.W.3d 921, 925-26 (Tex.App.--Houston [1st Dist.] 2013, no pet.); *Salazar v. State*, 298 S.W.3d 273, 279 (Tex.App.--Fort Worth 2009, pet. ref'd); *State v. Vasquez*, 230 S.W.3d 744, 750 (Tex.App.--Houston [14th Dist.] 2007, no pet.); *Alvarado v. State*, No. 07-06-0086-CR, 2006 WL 2860973, at *3 (Tex.App.--Amarillo Oct. 9, 2006, no pet.)(not designated for publication); *McGee v. State*, 210 S.W.3d 702, 705 (Tex.App.--Eastland 2006, no pet.); *Salazar v. State*, 185 S.W.3d 90, 92 (Tex.App.--San Antonio 2005, no pet.); *State v. Rudd*, 871 S.W.2d 530, 532-33 (Tex.App.--Dallas 1994, no pet.); *Saldana v. State*, 783 S.W.2d 22, 23 (Tex.App.--Austin 1990, no pet.). We agree with our sister courts and join them in holding that the Due Course of Law provision does not provide greater protection than the Due Process Clause. Accordingly, we decline to follow *Pena III*.

The trial court is not required to give a jury instruction which is contrary to the law. *See Turpin v. State*, 606 S.W.2d 907, 913 (Tex.Crim.App. 1980)(stating that the jury should not be

charged on a defensive legal theory that is contrary to law). The trial court did not err by refusing to submit the instruction requested by Appellant because it is an incorrect statement of law. Issue Eleven is overruled.

## IMPERMISSIBLE COMMENT

In Issue Thirteen, Appellant asserts that the trial court impermissibly commented on the weight of the evidence by instructing the jury to not consider a question asked by Appellant's counsel during cross-examination of Trooper Marquez. During direct examination, Marquez testified about the SFSTs he administered to Appellant. With regard to the walk-and-turn test, Marquez detected three clues out of a possible eight. On cross-examination, he further explained that Appellant missed three heel-and-toes, he stepped off the line, and he turned incorrectly. Claiming that there are ninety-three ways a person could incorrectly perform the walk-and-turn test, Appellant's counsel attempted to establish through Marquez that Appellant got only five points wrong out of a possible ninety-three. The State objected on the ground of relevance and also asserted that the question was confusing and misleading. The trial court sustained the objection. When Appellant's counsel continued to pursue the line of questioning, the court called the attorneys to the bench and asked Appellant's counsel where he came up with the "93." Counsel replied that he added up all of the parts of the test (for example, the eighteen steps involved in the test). The trial court stated that he sustained the objection as misleading because the SFSTs are based on clues and the walk-and-turn test had only eight clues. At the State's request, the trial court instructed the jury that the lawyers' statements are not evidence. The court, apparently referring to the demonstrative evidence being shown on a projector, added that: "[W]hat you see here in front of you at this point, in so far as how it's being alluded to and how it's being referenced, that is simply the opinion of the lawyer. That is simply how [Appellant's

attorney] perceives a situation, and that is not evidence, okay?" As we stated in our discussion of Issue Twelve, Appellant was required to object to the trial court's comments during trial in order to preserve the complaint for appellate review. *See* TEX.R.APP.P. 33.1; *Unkart*, 400 S.W.3d at 99. Because Appellant failed to object to the instruction when it was given to the jury, he failed to preserve his complaint. Issue Thirteen is overruled.

## RESTRICTION ON CROSS-EXAMINATION

In Issue Fourteen, Appellant contends that the trial court improperly restricted his cross-examination of Trooper Marquez. During the State's direct examination of Marquez regarding the HGN test, the trial court permitted Appellant to conduct a *voir dire* examination of the witness to determine whether he was qualified to testify about the test. Through this questioning, Appellant explored Marquez's education, training, and experience. He also questioned whether Marquez knew there were forty-seven different types of nystagmus, such as audio kinetic nystagmus, intermittent vertical nystagmus, and latent manifest monocular vixation [sic] nystagmus, which had "nothing to do with alcohol." The trial court overruled Appellant's objection that Marquez was not qualified to testify as an expert witness and found that the State had established Marquez was certified to administer SFSTs. The following day during cross-examination of Trooper Marquez, Appellant's again asserted that there are forty-seven different types of nystagmus, such as gaze evoked-nystagmus or intermittent vertical nystagmus, and he asked Marquez whether he had covered or studied these at the academy. The State made a relevance objection and Appellant's counsel explained that he was trying to determine whether Marquez checked for or observed any of these other types of nystagmus. The trial court sustained the relevance objection. The court permitted Appellant to cross-examine Marquez about the HGN test but ruled he would not be allowed to repeat all of the questions asked during

- 22 -

the prior day's *voir dire* examination. Appellant established during cross-examination that Marquez had not tested Appellant to determine whether he had any of these other forty-seven types of nystagmus.

The Sixth Amendment guarantees a defendant the right to confront the witnesses against him. U.S. Const. Amend. VI; *Pointer v. Texas,* 380 U.S. 400, 406, 85 S.Ct. 1065, 1069, 13 L.Ed.2d 923 (1965). The constitutional right of confrontation necessarily includes the right to cross-examine witnesses to attack their general credibility or to show their possible bias, self-interest, or motives in testifying. *Hammer v. State,* 296 S.W.3d 555, 561 (Tex.Crim.App. 2009); *Carroll v. State,* 916 S.W.2d 494, 497 (Tex.Crim.App. 1996). A trial court violates a defendant's right of confrontation if it improperly limits appropriate cross-examination. *Carroll,* 916 S.W.2d at 497.

The trial court has broad discretion to impose reasonable limits on cross-examination to avoid harassment, prejudice, confusion of the issues, endangering the witness, the injection of cumulative or collateral evidence, or interrogation that is repetitive or only marginally relevant. *Johnson v. State,* 433 S.W.3d 546, 555 (Tex.Crim.App. 2014); *Lopez v. State,* 18 S.W.3d 220, 222 (Tex.Crim.App. 2000). The right to cross-examination is generally limited to relevant matters. *See* TEX.R.EVID. 611(b)(witness may be cross-examined on any relevant matter, including credibility). Evidence is relevant only if it tends to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. *See* TEX.R.EVID. 401. Irrelevant evidence is inadmissable. *See* TEX.R.EVID. 402. A defendant's right to cross-examine witnesses must be balanced against the probative value of the evidence. *Lopez,* 18 S.W.3d at 222. A trial court's decision to limit cross-examination is review for an abuse of discretion standard. *Billodeau v. State,* 277 S.W.3d 34, 43

(Tex.Crim.App. 2009).

The trial court permitted Appellant to establish that there are many other causes of nystagmus and Marquez did not rule out any of those other causes. There is no evidence in the record that any of these other types or causes of nystagmus is relevant or related to the horizontal gaze nystagmus Marquez detected in Appellant's eyes. The trial court could have reasonably found that this cross-examination was designed to elicit irrelevant or only marginally relevant evidence. Appellant has not shown that the court's refusal to allow him to question Marquez about each one of these forty-seven types or causes of nystagmus was an unreasonable restriction on his right of cross-examination. Issue Fourteen is overruled. Having overruled each issue presented, we affirm the judgment of the trial court.

August 12, 2015

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rivera, and Rodriguez, JJ.
(Rivera, J., not participating)

(Do Not Publish)